IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | |
| | : | |
| KENNETH EUGENE CHERRY, JR. | : | NO. 19-122-1 |

MEMORANDUM

Bartle, J.                                                November 10, 2021

The court has before it the Emergency Motion of defendant Kenneth Eugene Cherry, Jr., acting pro se, Requesting Home Confinement and/or a Reduction in Sentence Pursuant to the First Step Act.

I

On August 27, 2019, a jury convicted Cherry of twenty-one counts for various firearms offenses. These convictions included dealing in firearms without a license, and aiding and abetting (18 U.S.C. § 922(a)(1)(A), (a)(2)); possession of a firearm by a felon, and aiding and abetting (18 U.S.C. § 922(g)(1), (2)); possession and transfer of a machine gun (18 U.S.C. § 922(o)); possession of a firearm not registered in the National Firearm Registration and Transfer Record (26 U.S.C. § 5681(d)); and possession of a firearm with an obliterated serial number (18 U.S.C. §§ 922(k), 924(a)(1)(B)).

The court sentenced Cherry on May 13, 2021 to a term of imprisonment of 180 months followed by a three-year period of supervised release on May 13, 2021.  He is currently serving his sentence at the Federal Correctional Institution in Loretto, Pennsylvania ("FCI Loretto") with an anticipated release date of February 6, 2032.  He has served approximately thirty-one months of his sentence and has also accrued two months as credit for good conduct time.

II

Cherry's motion for compassionate release relies on 18 U.S.C. § 3582(c)(1)(A) as recently amended by the First Step Act.  Section 3582(c)(1)(A)(i) provides that a court may order compassionate release for "extraordinary and compelling reasons" but only if the reduction in sentence is "consistent with applicable policy statements of the Sentencing Commission":

> The court may not modify a term of imprisonment once it has been imposed except that—
> (1)  in any case—
>     (A)  the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed

>   the unserved portion of the original
>   term of imprisonment), after considering
>   the factors set forth in section 3553(a)
>   to the extent that they are applicable,
>   if it finds that—
>   >   (i)  extraordinary and compelling
>   >   reasons warrant such a reduction
>   >   . . .
>
>   and that such reduction is consistent
>   with applicable policy statements issued
>   by the Sentencing Commission.[1]

Congress has also enacted 28 U.S.C. § 994(t) which provides the following:

>   The Commission, in promulgating general
>   policy statements regarding the sentencing
>   modification provisions in section
>   3582(c)(1)(A) of title 18, shall describe
>   what should be considered extraordinary and
>   compelling reasons for sentence reduction,
>   including the criteria to be applied and a
>   list of specific examples. Rehabilitation of
>   the defendant alone shall not be considered
>   an extraordinary and compelling reason.

The application note 1(A) of section 1B1.13 of the Sentencing Guidelines explains that "extraordinary and compelling reasons" exist if the defendant is (1) "suffering from a terminal illness" including among others "advanced dementia"; (2) "suffering from a serious physical or medical condition"; (3) "suffering from a serious functional or cognitive impairment"; or (4) "experiencing deteriorating physical or

---

1.   Although the Government disagrees with Cherry's contention that he has met the administrative exhaustion requirement, it asks the court to address the merits of Cherry's petition.

-3-

mental health because of the aging process." The latter three grounds also require that the impairment "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."

Our Court of Appeals recently held in United States v. Andrews that a district court is not bound by the Sentencing Commission's policy statement in determining what is an extraordinary and compelling reason. 12 F.4th 255 (3d Cir. 2021). Still, the court may look to the policy statement as a guide, even if it is not ultimately binding. Id. at 260.

### III

Cherry argues that compassionate release should be granted because of his underlying medical conditions including epilepsy and asthma, which he claims put him at a high risk of severe illness or death should he contract COVID-19. He notes that the Center for Disease Control and Prevention ("CDC") lists asthma as a risk factor that places a person at a higher risk for serious illness or death from COVID-19. Cherry also maintains that the advent of the COVID-19 "Delta" variant--which causes more infections, spreads faster, and "might cause more

severe illness than previous variants in unvaccinated people"[2]-- further supports his release.

The Government agrees that Cherry's medical records confirm that he has epilepsy and asthma. Both are being treated with medication. It also acknowledges the CDC considers "moderate to severe" asthma as a risk factor. Nonetheless, the Government counters Cherry does not present an extraordinary and compelling reason warranting release because Cherry has now received the COVID-19 vaccine. It notes that he had previously contracted and recovered from COVID-19 while he was in the Government's custody at the Federal Detention Center in Philadelphia earlier this year.

The court is, of course, mindful of the devastating worldwide pandemic and the special dangers the highly contagious coronavirus poses for Cherry and all others in prison. The court is also sympathetic to Cherry's medical condition. However, the COVID-19 pandemic with its recent Delta variant manifestation does not warrant the release of every federal prisoner with health conditions that make them more susceptible to the disease. See United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020). The Bureau of Prisons represents that it has

---

2. Delta Variant: What We Know About the Science, Ctrs. For Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html (last updated Aug. 26, 2021).

offered vaccines to every inmate at FCI Loretto, resulting in a 92.5% overall vaccination rate, and that there presently are no COVID-19 cases among inmates in that institution.

While there is now the Delta variant with which society has to contend, the vaccine Cherry received has proven effective at preventing serious illness and complications from the variant. See, e.g., United States v. Martin, Cr. A. No. 98-178, 2021 WL 4169429, at *6 (E.D. Pa. Sept. 14, 2021), appeal filed (3d Cir. Oct. 13, 2021). Therefore, despite his asthma and the spread of the Delta variant, the court agrees that Cherry does not present an extraordinary and compelling reason for granting compassionate release because of the COVID-19 pandemic. See, e.g., United States v. Otero-Montalvo, Cr. A. No. 16-419, 2021 WL 1945764, at *3 (E.D. Pa. May 14, 2021).

IV

The court must also consider the factors under 18 U.S.C. § 3553(a) when deciding whether to grant compassionate release under § 3582(c)(1)(A). These factors include the need to "reflect the nature and circumstances of the offense and the history and characteristics of the defendant," "reflect the seriousness of the offense," "promote respect of the law," and "afford adequate deterrence to criminal conduct."

Cherry asserts that his release presents no danger to the community. He argues his time served, including the time he

spent in detention before he was sentenced, "constitutes a sentence sufficient, but not greater than necessary, to accomplish the goals of his sentencing." He characterizes his firearms possession and trafficking offenses as nonviolent crimes. He points to his good conduct and work record in prison.[3] He also maintains that if released, he would have strong family support and employment prospects.

Even if the court accepts Cherry's representation that he has stayed out of trouble in prison, that factor does not allow for his release. Under 28 U.S.C. § 994(t), Congress has made it clear: "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for compassionate release.

In any event, his rehabilitation does not outweigh other § 3553(a) factors which support the need for him to serve the sentence imposed. The extreme seriousness of Cherry's offenses cannot be denied. As previously noted, Cherry was convicted of multiple counts of firearms trafficking offenses. He has only served less than three years of his fifteen-year sentence. Releasing him now would not appropriately reflect the nature and circumstances of his offenses, promote just

---

3. The Government represents that Cherry committed four disciplinary infractions while he was detained in 2019 and 2020 before he was sentenced.

punishment, or afford adequate deterrence to criminal conduct. See § 3553(a).

V

The court, taking all the relevant facts into account and arguments for a reduction in sentence, finds that Cherry has not met his burden in establishing an extraordinary and compelling reason that warrants his entitlement to compassionate release under § 3582(c)(1)(A). Accordingly, the court will deny the motion of Cherry to reduce his sentence and grant compassionate release.